SO ORDERED: December 05, 2008.



Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JOSEPHINE HUNT | )  CASE NO. 08-6916-AJM-7 |
| | ) |
| Debtor | ) |

**ORDER DISALLOWING DEBTOR'S
VEHICLE OWNERSHIP EXPENSE DEDUCTION
AND NOTICE OF DECEMBER 15, 2008 HEARING
ON "SPECIAL CIRCUMSTANCES"**

*Background*

The enactment of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was driven by the perception that debtors who in fact had some ability to repay their creditors were nonetheless receiving discharges under chapter 7 liquidation / no repayment cases. Prior to BAPCPA, chapter 7 debtors with the ability to repay some portion of their debts could have their cases dismissed for "*substantial abuse*" under Section 707(b) but under the statute there was a presumption

1

that the debtor was entitled to chapter 7 relief.  BAPCPA changed all that through the implementation of the "means test", applicable to both chapter 7 and chapter 13 cases.  The chapter 7 means test is designed to ferret out those debtors who could repay a portion of their debt from those that could not.  Now, there is a presumption of *abuse* if the chapter 7 debtor's income exceeds his expenses.  The chapter 7 debtor's case will be dismissed unless the debtor rebuts the presumption by demonstrating "special circumstances".

The "means test" by which a chapter 7 debtor is judged to have the ability to pay consists of the debtor filing the extensive "Chapter 7 Statement of Current Monthly Income and Means Test Calculation" form, known also as the B22A form or the means test form ("MTF").  The MTF calculates the debtor's income and, in the case of above median income debtors, allows the debtor to deduct certain expenses.  If the debtor's claimed deductions exceed the debtor's income, no further calculations are necessary and the "presumption of abuse" does not arise.

The Debtor filed her chapter 7 case on June 12, 2008.  Because she is an above median income debtor, she completed Part IV, V and VI of MTF and, as a result of her calculations on that form, her deductions exceeded her income and therefore the presumption of abuse did not arise.  Among the deductions she claimed was a standard transportation *ownership* deduction of $489 on Line 23 of the MTF even though she owned her vehicle free and clear of liens and therefore had no car payment.  The UST argues that the Debtor is not entitled to the transportation ownership deduction, and, if the UST is correct, the Debtor's income will exceed her expenses and

2

the presumption of abuse will arise. [1]  The Debtor on line 22A of the MTF also claimed a $183 vehicle *operation* expense deduction to which the UST does not object.  But, because the presumption of abuse did not arise under the Debtor's calculations, she did not complete Part VII of the MTF setting forth additional expenses as "special circumstances" that could otherwise rebut the presumption.

The Court bifurcated this matter and heard on October 20, 2008 the portion of the UST's motion pertaining to the allowance of the vehicle ownership expense deduction.  Because the Court finds that the Debtor is not entitled to claim that deduction, a hearing to consider additional expenses as "special circumstances" will be held on December 15, 2008 at 10:00 a.m. as scheduled. [2]

### *Discussion*

Depending on the debtor's circumstances, §707(b) and the MTF allow a deduction for (1) a debtor's vehicle ownership expenses for up to two cars; (2) a debtor's vehicle operating expense, and, (3) if there are no cars for which the debtor pays operating expenses, a debtor's public transportation expense.  The dispute here involves only the ownership expense deduction under (1).

Several courts have considered whether a debtor with no car payment can claim the vehicle ownership deduction in the context of both chapter 7 and 13.  As of this

---

[1] The UST objected to other deductions claimed on the Debtor's MTF but the Debtor thereafter filed an amended MTF resolving those objections.

[2] The Court today decides only the issue of whether a chapter 7 debtor who owns a vehicle free and clear of liens is entitled to claim the vehicle ownership deduction on lines 23 and 24 of the MTF.  The issue of whether the debtor is entitled to deduct the full amount provided for by the Local Standards where the debtor's actual car payment is less than that amount is not addressed in this entry.  See, *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D. N.C. 2008).

3

writing, a majority of the district courts which have published opinions have held that the deduction cannot be claimed.   See, *In re Ross-Tousey*, 368 B.R. 762 (E.D. Wis. 2007); *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007); *In re Deadmond*, 2008 WL 191165 (D. Mont. 2008); *In re Meade*, 384 B.R. 132 (W. D. Tex. 2008); *Wieland v. Thomas*, 382 B.R. 793 (D. Kan. 2008); *Grossman v. Sawdy*, 384 B.R. 199 (E.D. Wis. 2008); and *Tate v. Lentz*, 2008 WL 4489761 (S.D. Miss. 2008).  A few district courts have allowed the deduction.  See, *In re Armstrong*, 395 B.R. 127 (E.D. Wash. 2008); *In re Ragle*, 2008 WL 4454163 (E. D. Ky. 2008).  The issue has made it to the bankruptcy appellate panel level where the panels split evenly on the issue.  The panels for the 8th and 9th circuits disallow the deduction, *In re Ransom,* 380 B.R. 799 (9th Cir. BAP 2007); *In re Wilson*, 383 B.R. 729 (8th Cir. BAP 2008), and *In re Powell*, 392 B.R. 407 (8th Cir. BAP 2008), and the panels for the 6th and 10th circuits allow it, *In re Pearson,* 390 B.R. 706 (10th Cir. BAP 2008) and *In re Kimbro,* 389 B.R. 518 (6th Cir. BAP 2008).  [3]   The issue is currently pending before the 7th [4] , 8th [5] , 9th [6] , and 10th [7]  Circuit Courts of Appeal.

---

[3] Bankruptcy courts too numerous to mention have issued opinions on the matter, among them are one from this district, and two from the Northern District of Indiana; all involved the "projected disposable income" requirement under chapter 13 and whether the debtor was eligible to take the vehicle ownership deduction where the debtor owned the vehicle free and clear of liens and had no car payment. See, *In re Hedge*, 2008 WL 4294281 (Bankr. S. D. Ind.) (ownership deduction allowed); *In re Dettman*, Case No. 06-30368-HCD-13 (September 25, 2007) and *In re Hubbard*, 384 B.R. 808 (Bankr. N. D. Ind. 2007) (ownership deduction disallowed).

[4] *Neary v. Ross-Tousey*, Court of Appeals Docket # 07-2503.

[5] *eCAST Settlement Corp. v. Washburn,* Court of Appeals Docket # 08-2023*; Babin v. Washburn*, Court of Appeals Docket #08-2024.

[6] *Ransom, et al  v. MBNA, America Bank*, Court of Appeals Docket #08-15066.

[7] *Pearson, et al  v. Stewart, et al*, Court of Appeals Docket # 08-8060.

### *The Means Test under §707(b)(2)*

The starting point is the language of Section 707(b)(2)(A)(ii)(I), which provides, in part:

> The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief , for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.  ... Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts...

(Italics added). The statute places expenses into three categories: (1) those "applicable" expenses, as calculated under the IRS National Standards [8] ; (2) those "applicable" expenses, as calculated under the IRS Local Standards [9] ; and (3) "Other Necessary Expenses" that are calculated according to the amounts actually incurred. [10] The vehicle ownership expense here falls under the IRS Local Standard category and thus, the Debtor is entitled to deduct the "*applicable* monthly expense" associated with that deduction. Whether the deduction here is allowed depends on the meaning of "applicable".

By distinguishing between "applicable" for some expenses and "actual" for

---

[8] Expenses for food, clothing and health care (line lines 19A and 19B of the MTF) are calculated according to the IRS' National Standards.

[9] Expenses for housing, utilities and transportation (lines 20A, 20B, 21, 22A, 22B, 23 and 24 of the MTF) are calculated according to the IRS' Local Standards

[10] Mandatory payroll deductions, life insurance, court-ordered payments, education for employment or for a physically or mentally challenged child, childcare, health care and telecommunication services (lines 25, 26, 27, 28, 29, 30, 31, and 32 of the MTF) fall under the "Other Necessary Expenses" category.

5

others, Congress evidenced an intent to calculate deductions for food, clothing, health care, housing, utilities and transportation differently than deductions for taxes, mandatory payroll deductions and "Other Necessary Expenses". Courts allowing the transportation ownership deduction where there is no car payment reason that "applicable" is not synonymous with and means something other than "actual". Nothing in §707(b)(2)(A)(ii)(I) expressly requires a debtor to have an "actual" payment with respect to the expenses calculated according to the IRS National or Local Standards, and thus, the deduction as "applicable" even though it is not "actually" incurred. See, *Kimbro*, 389 B.R. at 522-523. This line of cases further argues that, Congress intended not to require an actual payment owed to claim this deduction by adding the phrase "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts" midway in the statute. Besides, had Congress so intended for the deduction to available only if a payment was owed, it easily could have provided for such. Thus, according to this view, the debtor need only own a car to qualify for the transportation ownership deduction since ownership alone makes that deduction "applicable" to the debtor. The deduction, then, is allowed as a "fixed" monthly expense as set forth in the IRS Local Standards for the debtor's geographic area regardless of whether a payment is owed.

  The majority line of cases which disallows the deduction if there is no debt owed agree that "applicable" is not synonymous with "actual" but also are "not persuaded that Congress intended the distinction between "applicable" and "actual" to be so trenchant", or meant for those terms to have "essentially opposite meanings". *Ross Tousey*, 368 B.R. at 765. Rather, these courts find that "applicable" modifies the phrase "debtor's

6

monthly expenses" appearing at the beginning of §707(b)(2)(A)(ii)(I).  Thus, under this interpretation, though the debtor's "actual" expense does not control the amount of the deduction, "the debtor must still have *some* expense in the first place before the Standard amount becomes 'applicable' " *Ransom*, 380 B.R. at 805, quoting *Ross Tousey*, 368 B.R. at 765.   Had Congress intended that no payment was required in order to claim the expense deduction, it could have left out the reference to "applicable", and instead provided that "[t]he debtor's monthly expenses shall be the monthly expense amounts specified under the National and Local Standards". *Ross Tousey,* 368 B.R. at 765, quoting In re *Slusher*, 359 B.R. 290, 309 (Bankr. D. Nev. 2007).

      Furthermore, the statute itself refers to the National and Local Standards "... issued by the Internal Revenue Service", and hence, Congress intended for the deductions to be calculated in the same manner as is calculated by the IRS for collection purposes.  Both the IRS' Collection Financial Standards and part 5, chapter 15, section 1 of the IRS' Internal Revenue Service Manual entitled "Financial Analysis Handbook" provide that the taxpayer with no car payment shall be entitled *only* to the transportation *operating* expense, and not the transportation *ownership* expense. *Fokkena*, 373 B.R. at 651.   Thus, the debtor must first owe payments on the vehicle for the allowable expense to "apply"; in cases where the debtor has a car payment and that payment exceeds the amounts set forth in the Local Standards, the Local Standards act as a cap on the allowable deduction.

7

### *The Debtor Here is Not Entitled to Claim*
### *the Vehicle Ownership Expense Deduction*

This Courts believes the reasoning of the majority line of cases to be more persuasive and therefore finds that the Debtor cannot claim the vehicle ownership expense deduction unless she has a car payment. This result is not only consistent with the language of §707(b)(2)(A)(ii)(I), but also with BAPCPA's purpose in implementing the means test:

> Although the legislative history to BAPCPA is scant and often difficult to piece together, there can be no doubt that the purpose of these amendments to §§707(b) and 1325(b) was to require above median income debtors to make more funds available to their unsecured creditors, and to do so by limiting the court's authority to allow expenses. Thus, for those with incomes below the median, bankruptcy courts continue to have the authority to determine whether expenses being incurred are reasonable, without statutory restriction. A debtor with income below the median would not be allowed a deduction for vehicle ownership expense if such expense were not in fact being incurred. If would turn the logic of BAPCPA on its head to allow above median debtors such a deduction.

*Wilson*, 383 B.R. at 733-34. And, in keeping with BAPCPA's purpose in requiring above median income debtors to make more funds available, a debtor's ability to pay more funds to creditors depends on the funds needed by the debtor for the "necessities of life":

> Congress has deemed transportation and car ownership to be among the necessities of life that a debtor is entitled to fund before he must pay back his creditors. Thus, the statute excludes these amounts from the monthly pot of money that the creditors can get their hands on. What's important, therefore, is not *how many* cars a debtor owns, but how many cars he makes *payments* on every month– it is only the payments that affect the debtor's ability to repay his creditors. The statute is only concerned about protecting the debtor's ability to continue owning a car, and if the debtor *already* owns the car, the debtor is adequately protected.

*Fokkena*, 373 B.R at 651.

Nor does the Court believe that it is unfair to disallow the vehicle ownership expense deduction to a debtor who owns the car outright. Critics of the majority view argue that disallowing the deduction and limiting the debtor only to the operation expense deduction fails to take into account a debtor's potential need to replace the vehicle in the near future:

> Courts allowing a debtor to take the deduction even though he does not have a car or lease payment have argued that this approach reflects the fact that 'a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses) , and it avoids the arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing'

*Ragle* at *11. (Citations omitted).

"Arbitrary distinctions", however, still persist if the deduction *is* allowed. A debtor who owns a perfectly good car with no car payment is allowed the deduction for *anticipated* future ownership expenses which he may never incur during the course of his bankruptcy. Yet, the debtor who does not own a car, but who has an *immediate* need for one, gets no "deduction" to shelter income that could be used to purchase a car. The two debtors are treated differently based on the arbitrary distinction of car ownership. This outcome truly has the effect of favoring the debtor who has a perfectly good vehicle over one who does not and who may desperately need one. Under this theory (the need for a vehicle in the future), logic would dictate that the debtor without a vehicle is more deserving of the deduction than the debtor who currently owns a perfectly good car.

There are certainly other avenues by which anticipated replacement costs for the car owner with no current payment can be taken into account besides allowing the

9

ownership expense deduction.  A debtor with a high mileage car may qualify for an extra $200 allowance in *operating* expenses.  See, *Ransom,* 380 B.R. at 808.  Limiting a debtor to only the vehicle operating expense deduction does not prohibit the debtor from claiming additional expenses anticipated in the purchase of a replacement vehicle based on "special circumstances".  *Id*.

On the other hand, unfairness would result if the Court allowed the ownership expense deduction even though the Debtor had no car payment.  As observed by one court, if mere ownership of the vehicle is the only requirement needed to qualify for the ownership expense deduction, then "debtors who own two unusable cars rusting in their back yard would be entitled to a windfall benefit of both ownership and operating expense deductions although they, in fact, incur no expenses by owning the vehicles".  *Fokkena*, 373 B.R. at 652.  Using the MTF as revised in January, 2008, a clever debtor with what otherwise would be monthly disposable income of $598 could purchase a "car" (or what's left of one) for $100 on the eve of filing and get the "fiction" of a $489 deduction from his monthly income that reduces his disposable income to less than $109.58 a month[11] and stay in a chapter 7.  Yet, the debtor with monthly disposable income of only $185.00 (versus $598.00) who was not clever enough to purchase a cheap "car" before filing and who gets neither the deduction nor the corresponding reduction in disposable income cannot stay in the chapter 7 and is placed in a chapter 13 to avoid dismissal of his case.  The Court can think of no distinction more arbitrary

---

[11] The debtor's "monthly disposable income" appears on line 50 of the MTF.  That number times 60 is the "60 month disposable income" and appears on line 51.  If the number on line 51 is a number less than $6575 (or ($109.58 a month), the presumption of abuse does not arise.  However, if the number on line 51 is more than $10,950 ($182.50 a month) the presumption of abuse arises.

than that of which debtor is more attuned to "beat the system".

Even more stark is the unfairness that would result when one compares debtors A and B that are demographically identical in all respects (e.g. education, income, family size, family expenses) other than car ownership. Debtor A owns two cars free and clear of liens. Debtor B owns no cars. Both A and B have the same income, and are above median income debtors. Neither A nor B has a car payment. Yet, if the minority view were adopted, A could claim a $978 ownership deduction ($489 each) for both cars and B could claim no ownership deduction. That means, that between two essentially identical debtors, one (B) would be required to make payments which could be as much as $978 a month ($58,680 over 60 months) while the other (A) would not be required to pay anything to his creditors. See, *Deadmond* at *4. Such an interpretation of BAPCPA does not take into account that A incurs no ownership expenses, yet reaps benefits not available to B simply based on the car ownership. Given this example, the Court is even more convinced that the ownership deduction is not available to debtors who own their vehicles outright.

Thus, the Court finds that the Debtor here is not entitled to claim the vehicle ownership expense deduction since she owed no car payment. Disallowing this deduction results in the Debtor's income exceeding her expenses and thus the presumption of abuse arises. To the extent the UST's motion seeks to disallow this deduction, it is GRANTED. However, the Debtor was not required to complete the additional expenses or "special circumstances" section under Part VII of the MTF since her calculations resulted in her expenses exceeding her income. The UST's motion cannot be fully adjudicated without giving the Debtor an opportunity to rebut the

presumption of abuse by demonstrating "special circumstances" and a hearing on that matter will be held on December 15, 2008 at 10:00 a.m as scheduled.

# # #

Distribution:
Jay Andrew Harp, Attorney for the Debtor
Joseph F. McGonigal, Office of the United States Trustee